# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5613 | **DATE** | 12/24/2002 |
| **CASE TITLE** | Gelco Corp. vs. Duval Motors Corp., *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion to dismiss (doc. # 7) is GRANTED as to Count IV, and DENIED as to Counts I through III.  Defendants' answer is due by 01/20/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

**DEC 2 6 2002**
date docketed

docketing deputy initials

12/24/2002
date mailed notice

JJK
courtroom deputy's initials

U.S. DISTRICT COURT
CLERK
02 DEC 24  AM 10: 23

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

23

GELCO CORPORATION, a Delaware )
corporation, )
)
    Plaintiff, )
)
    v. )   No. 02 C 5613
)
DUVAL MOTOR COMPANY d/b/a )   Judge Sidney I. Schenkier
DUVAL FORD, DUVAL MOTOR )
COMPANY d/b/a DUVAL HONDA, and )
REGENCY MOTOR COMPANY, INC. d/b/a )
DUVAL ACURA, Florida corporations, )
)
    Defendants. )

**DOCKETED**

**DEC 2 6 2002**

## MEMORANDUM OPINION AND ORDER[1]

In this diversity action, the plaintiff (sometimes referred to here in as "Gelco" or "GEFCAS")

asserts claims of common law fraud (Count I); common law breach of contract (Count II); civil

conspiracy (Count III); and violation of the Illinois Consumer Fraud Act (Count IV). The defendants

have filed a motion to dismiss (doc. # 7) all of these claims.[2] The plaintiff concedes that Count IV

---

[1]On November 6, 2002, by consent of the parties, this case was reassigned to this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 (see doc. #s 13, 14).

[2]On October 7, 2002, the defendants filed a motion to dismiss (doc. # 7), with a supporting memorandum (doc. # 8). On November 7, 2002, the defendants filed a motion for leave to amend the original supporting memorandum, to add one argument and to correct one typographical error in the original memorandum (doc. # 18). The Court granted this motion on November 14, 2002 (doc. # 19), and the amended memorandum was filed that same day (doc. # 20). The amended memorandum thus supercedes the original memorandum, and supplements the original motion by adding one argument.

23

should be dismissed, and that portion of the motion is therefore granted.[3] However, for the reasons set forth below, the motion to dismiss Counts I-III is denied.

## I.

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits" of the lawsuit. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1990). For purposes of reviewing the motion, the court must take all the plaintiff's well-pleaded allegations as true. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The Court must also view the plaintiff's allegations in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); the plaintiff is entitled to all reasonable inferences that can be drawn therefrom. *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied*, 475 U.S. 1047 (1986). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Triad Assoc., Inc.*, 892 F.2d at 586. The allegations of the amended complaint, which we take as true for purposes of this motion, are as follows.

In 1986 and 1990, the plaintiff entered into Dealer Lease Plan Agreements ("the Lease Agreements") with the defendants (Am. Compl. ¶ 6). Pursuant to the Lease Agreements, the

---

[3]Plaintiff concedes that Count IV should be dismissed under recent decisions in this district holding that the Illinois Consumer Fraud Act, 815 ILCS 505/2, requires allegations that the fraud alleged has affected Illinois residents. *See, e.g., Gelco Corp. v. Major Chevrolet, Inc.*, No. 01 C 9719 (N.D. Ill., Oct. 30, 2002) (Pl.'s Resp., Ex. A). The plaintiff, however, requests that Count IV be dismissed *without* prejudice because "[t]he contours of the extra-territorial applicability of the Illinois Consumer Fraud Act remains an open question, as the Illinois Supreme Court has yet to issue a decisive ruling" (Pl.'s Resp. at 8 n.3). The plaintiff cites no authority to support its request for a dismissal without prejudice, and we do not believe that the lack of a definitive resolution by the Illinois Supreme Court on this issue is a basis for making the dismissal without prejudice. To the contrary, in *Major Chevrolet*, as well as *The Alcar Group, Inc. v. Corp. Performance Systems*, 109 F. Supp. 2d 948, 952 (N.D. Ill. 2000), courts in this district have concluded that Illinois law requires dismissal of plaintiff's allegations on the merits. Moreover, in *Oliveria v. Amoco Oil Co.*, 726 N.E.2d 51, 61 (4th Dist. 2000), *rev'd in part and vacated in part on other grounds*, 776 N.E.2d 151(Ill. S.Ct. 2002), an Illinois state court made the same ruling. We see no basis to depart from the precedential authority of these rulings since the plaintiff here does not contend that it can plead that Illinois consumers have been affected by the fraud claimed in Count IV. We will, therefore, dismiss Count IV with prejudice.

defendants would negotiate terms with their customers for the lease of automobiles (*Id.*, ¶ 7). The defendants then would assign the customer leases, and all of the defendants' right, title and interest in the vehicles to plaintiff; in turn, if certain conditions were met, the plaintiff would pay defendants the price that the defendants had negotiated with the customers (less any acquisition fees and/or down payments) (*Id.*). Plaintiff alleges that beginning "at least as early as 1995," the defendants engaged in "a massive pattern of fraud involving falsification of documents" in connection with transactions under the Lease Agreements (*Id.*, ¶ 1). According to the plaintiff, this alleged pattern of fraud took two forms.

*First*, the plaintiff alleges that the defendants engaged in a "vehicle misidentification scheme" (Am. Compl., ¶¶ 8-12). The plaintiff alleges that for each customer lease that defendants sold to plaintiff, the defendants were required to submit, among other things, a vehicle condition report showing the "trim level" (that is, the package of amenities and features) of the vehicle being leased to the customer and sold to plaintiff (*Id.*, ¶ 8). According to the plaintiff, the more extensive the trim level, the higher the "residual value" of the vehicle (that is, the higher the expected whole sale value at the end of the lease to the customer) (*Id.*, ¶¶ 9-10). Plaintiff claims that "[b]eginning in or about 1995" the defendants "purposefully misidentified trim levels and value added options on documentation provided to GECAFS for vehicles they had leased. The falsified documentation was then used to set the residual value of the vehicles, resulting in grossly overstated residual values" (*Id.*, ¶¶ 11-12). Plaintiff alleges that this occurred in approximately 120 transactions (*Id.*, ¶ 31). Plaintiff claims that it was damaged by receiving this alleged false documentation, because it "received monthly payments that were below the appropriate level because of the overstated residual

value of the vehicles. Moreover, at lease termination GECAFS [had] vehicles worth significantly less than the stated residual value" (*Id.*, ¶ 11).

 *Second*, the plaintiff claims that the defendants engaged in an alleged "credit fraud scheme" (Am. Compl. ¶¶ 13-21). Plaintiff alleges that as part of negotiating the customer leases, the defendants obtained from customers relevant credit information, some of which was not available in credit bureau reports that the plaintiff retrieved concerning the customers (*Id.*, ¶¶ 13-15). The defendants used this information to complete customer credit applications that were submitted to plaintiff; the plaintiff then used this information supplied by the defendants to assess the creditworthiness of the customer, and to decide whether to accept the deal without stipulations, to accept it with stipulations, or to reject it (*Id.*, ¶¶ 15-16). The plaintiff alleges that "[b]eginning in or about 1995," the defendants engaged in a scheme to defraud the plaintiff by misrepresenting information on the customer credit applications, specifically salary information (*Id.*, ¶ 18). The amended complaint cites one example of this alleged fraud, and states that a sample of the defendants' portfolio (the amended complaint does not identify the size of the sample or how it was selected) shows some 40 such misrepresentations (*Id.*, ¶ 19). Plaintiff alleges that it "made credit decisions relying on the falsified credit information provided by Defendants, GECAFS agreed to finance leases that it would not otherwise have financed and provided more favorable credit terms than certain customers would have been offered" had the defendants submitted accurate information (*Id.*, ¶ 20).

## II.

All of the plaintiff's claims in Counts I through III arise out of these two alleged schemes. Plaintiff alleges that the vehicle identification and credit schemes constitute common law fraud and common law civil conspiracy (Counts I and III), and that by submitting the allegedly false vehicle and credit information, the defendants also breached the Lease Agreements (Count II). The defendants argue that for various reasons, each of these claims is defective. We address each of defendants' arguments in the order defendants present them.

### A.

In Count II, the plaintiff alleges that the defendants breached the Lease Agreements by (1) "intentionally provid[ing] false customer credit information," and (2) "fraudulently misidentif[ing] vehicle trim levels and/or overstat[ing] residual value" (Am. Compl. ¶¶ 29, 31). The defendants have moved to dismiss the vehicle description allegations (but not the credit information allegations) of Count II for failure to state a claim. The defendants make one argument, namely, that the Lease Agreements "are fully integrated agreements containing express integration clauses" and thirteen specific warranties; that these specific warranties constitute the exclusive set of the defendants' obligations with respect to the subjects covered by the Lease Agreements; and that none of the warranties requires that the defendants provide accurate descriptions of the trim levels of the vehicles being sold to plaintiff (Defs.' Am. Mem. at 3 (citing Am. Compl., Ex. A, ¶ 16)). This argument fails for two reasons.

*First*, it is not clear that the alleged "vehicle misidentification scheme" would not violate the specific warranties by the defendants that they had "good title to the lease *and the leased vehicle*," and that they had "titled and registered *the leased vehicle*" (Am. Compl. , Ex. A, ¶ 6(a), (i))

5

(emphasis supplied). As we read the vehicle misidentification claim, the plaintiff asserts that defendants leased vehicles of certain descriptions to their customers, and then turned around and misdescribed those vehicles when they sold them to the plaintiff. In essence, then, the complaint can be read as asserting that the vehicles that the defendants leased to their customers were not the same vehicles that they then sold to the plaintiff. Under this reading of the complaint, it might be that the defendants did not have title to the leased vehicle, at least as it was described to the plaintiff. This reading depends in part on the meaning of the term "leased vehicle," which is not defined in the Lease Agreements.

The Court expresses no view as to whether this is what the plaintiff will be able to prove. But, on a motion to dismiss, it is not our province to decide whether the plaintiff can prove what it pleads; rather, dismissal is proper only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would enable him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). We are unable to say that there is no set of facts under which the plaintiff could prove that the vehicle misidentification scheme violated these warranties.

*Second*, we reject defendants' assertion that the only means of breaching the Lease Agreement is by violation of one of the thirteen specific warranties. That argument is inconsistent with the provision of the Lease Agreements that provides remedies to the plaintiff "[s]hould DEALER default in the performance of any term or condition herein or should DEALER breach any warranty herein" (Am. Compl., Ex. A, ¶ 7). We hold that this language unambiguously establishes that breach of the specific warranties is not the only means by which the defendants could violate the Lease Agreements, and thus trigger the plaintiff's right to seek contractual remedies. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990) (a court "must initially

determine, as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent"). *See also Kinesoft Dev. Co. v. Softbank Holdings, Inc.*, 139 F. Supp. 2d 869, 889 (N.D. Ill. 2001).

The question remains whether the kind of intentional vehicle misdescription alleged by the plaintiff constitutes a "default in the performance of any term or condition" of the Lease Agreements other than the specific warranties. Plaintiff makes the argument that it is nonsensical to interpret the Lease Agreements to permit the defendants to lie about the vehicles being sold to the plaintiff (Pl.'s Mem. at 5). They argue that defendants' conduct violated the Paragraph 2(a) of the Lease Agreements, which provide that plaintiff "shall purchase a lease and leased vehicle for a sum agreed upon between" plaintiff and defendants, and Paragraph 2(b)(2), which requires plaintiff to purchase the lease and the leased vehicle after, among other things, plaintiff has received "[a]ll other documents in an acceptable form and information which [plaintiff] may require in connection with the subject lease transaction." Plaintiff argues that submitting false vehicle identification violates these provisions, especially when the provisions are read in the backdrop of the duty of good faith and fair dealing, which "comes into play in defining and modifying duties which grow out of specific terms and obligations." *B.A. Mortgage & International Realty Corp. v. American National Bank & Trust Co. of Chicago*, 706 F. Supp. 1364, 1373 (N.D. Ill. 1989) (Pl.'s Mem. at 5, 6).

For their part, defendants argue that the contract is unambiguous in its failure to impose any obligation whatsoever on the defendants to accurately describe the vehicles being sold to the plaintiff. Defendants argue that the failure to expressly impose a requirement to provide accurate information about the vehicle description must be construed as an intentional decision by the parties, particularly when measured against the fact that plaintiff expressly required the defendants to warrant

7

that any credit information they furnished would be "true, complete and accurate" (Defs.' Reply Mem. at 4-6). The defendants argue that Paragraphs 2(a) and 2(b) do not expressly impose a duty to provide accurate vehicle description information, and that the duty of good faith and fair dealing should not be used to create a warranty where none exists (*Id.*, at 8).

These competing arguments persuade the Court that, at a minimum, the Lease Agreements are ambiguous as to defendants' obligation to provide accurate vehicle description information. The Court finds it hard to believe that it was the intent of the parties that the defendants would have complete license to describe the vehicles in any way they might wish, without regard to reality. One might reasonably conclude that the defendants failed to submit the "other documents" required by Paragraph 2(b)(2) in a good faith manner if (as alleged) they knowingly submitted vehicle description information that misdescribed the vehicles in question, to the detriment of the plaintiff. But, the absence of an express obligation to provide correct information, similar to the express obligation to provide accurate credit information, gives the Court pause. The provisions cited by the plaintiff in Paragraphs 2(a) and 2(b)(2) of the Lease Agreements do not unambiguously answer the question. Perhaps evidence that will develop during discovery concerning the meaning of the terms "leased vehicle" and "all other documents" will shed light on the intent of the parties. *See Air Safety*, 706 N.E.2d at 884 (parol evidence is permitted to "aid the trier of fact in resolving the ambiguity" in a contract).

Moreover, there is a question – not fully addressed by the parties – as to whether the vehicle condition reports submitted by the defendants (which contained the alleged misdescription of the vehicles' trim levels) falls within the definition of "[a]ll other documents" that defendants were required to submit as part of the sale of a lease and leased vehicle to plaintiff under the Lease

Agreement. Under Illinois law, a contract "may incorporate another instrument by reference," so long as the contract shows "intent to incorporate the other document and make it part of the contract itself." *Rosenblum v. TravelbyUS.com, Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) (quoting *Turner Construction Co. v. Midwest Curtainwalls, Inc.*, 543 N.E.2d 249, 251 (1st Dist. 1989)). The intent, *vel non*, to incorporate another document into a contract is based on an examination of the four corners of the contract itself. *Rosenblum*, 299 F.3d at 664. It strikes the Court that the Lease Agreements are in the nature of "master agreements," pursuant to which the parties would engage in future specific transactions, and in those future transactions, certain documents would be submitted. But, whether the vehicle condition report was contemplated to be one of those documents, and was incorporated into the Lease Agreements, is a matter that the Court need not resolve at this time.

For now, it is enough to say that unanswered questions concerning defendants' contractual obligation to provide accurate vehicle identification information lead the Court to deny the motion to dismiss Count III for failure to state a claim.

**B.**

The defendants challenge the fraud claim in Count I on the ground that the plaintiff cannot establish reliance (and thus argue that the conspiracy claim in Count III must fail, as well, since it is dependent on the fraud claim). The plaintiff has plead that it reasonably relied on the defendants' alleged misrepresentations concerning the vehicle identification and the credit worthiness of the defendants' lease customers (*see, e.g.*, Am. Compl. ¶ 25), and defendants correctly acknowledge that reasonable reliance typically is a fact question which is not susceptible of being decided on a motion to dismiss (Defs.' Am. Mem. at 7). But, defendants also correctly point out that reliance "can be

determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements." *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2000). Defendants argue that this is just such a case, because the presence of an integration clause in the Lease Agreements makes it unreasonable as a matter of law for plaintiff to have relied on any representations not warranted in the Lease Agreements – and defendants say the accuracy of the vehicle descriptions was not warranted (Defs.' Am. Mem. at 6-7; Defs.' Reply Mem. at 8). This argument fails for three reasons.

*First*, even where there is alleged fraud in the inducement of a contract, the presence of an integration clause does not automatically preclude a finding of reasonable reliance, but only does so where the contract "explicitly" contradicts precontractual promises. *See, e.g., Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1208 (7th Cir. 1998); *see also Budget Rent-a-Car Corp. v. Geneys Software*, No. 96 C 0944, 1997 WL 201549, at * 3 (N.D. Ill. Apr. 17, 1997) (claims for fraud are precluded only when "the oral fraud was discoverable by reading the terms of the contract"). *Cozzi* is not to the contrary; in that case, the Court found that the plaintiff was not entitled to rely on alleged precontractual representations where those representations were directly contradicted by the terms of the contract, and where the contract had an express provision stating that "you have not relied on any statements owners or owners' employees have made." *Cozzi*, 250 F.3d at 573, 75. These cases dealing with fraudulent inducement do not address the situation here, where the plaintiff claims reliance on alleged fraudulent conduct that occurred during the performance of the contracts many years after they were signed.

*Second*, defendants' argument plainly does not apply to the fraud claim insofar as that claim is based on the submission of allegedly fraudulent credit information. Count I asserts that part of

10

the fraudulent conduct alleged by the plaintiff is the misrepresentation of customers' credit information (Am. Compl. ¶ 24), and the Lease Agreements contain an express warranty by the defendants that the credit information they furnish would be "true, complete an accurate" (*Id.*, Ex. A, ¶ 6(e)). Thus, the argument that defendants advance would not in any event warrant dismissal of Count I insofar as that Count it is based on the allegation that the defendants submitted false credit information.

*Third*, as for the defendants' argument that defendants could not reasonably rely on representations concerning the vehicle description because they were not expressly warranted as correct, what we have said above applies here as well. For all of these reasons, we conclude that defendants' reliance argument does not warrant dismissal of Count I (or Count III).

## C.

The defendants argue that the common law fraud claim (Count I) should be dismissed for failure to plead the alleged fraud with particularity, as required by Fed. R. Civ. P. 9(b) (Defs.' Am. Mem. at 10). The defendants argue that the conspiracy claim (Count II) also must be plead with particularity as it is based on underlying allegations of fraud, *see Tango Music, LLC v. Deadquick Music, Inc.,* No. 99 C 7331, 2001 WL 897606, * 5 (N.D. Ill., Aug. 9, 2002); *Eisenhauer v. Stern,* No. 99 C 6422, 2000 WL 136011, * 2 (N.D. Ill., Jan. 27, 2000), and thus assert that the conspiracy claim should also be dismissed.

In a case alleging fraud by misrepresentation, Rule 9(b) "merely require(s) the plaintiff to state in his [or her] complaint 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th

Cir. 1992). In other words, Rule 9(b) does not require fact pleading showing that the representation was, indeed, false. *Id.* Rather, the Rule (and the case law interpreting it) simply requires the plaintiff to plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

The defendants claim that the amended complaint is "woefully lacking in <u>any</u> specific allegations of the 'who, what, when, where and how'" (Defs.' Am. Mem. at 10) (emphasis in original). The defendants complain that the plaintiff only generally alleges "massive" fraud (Am. Compl. ¶ 1), and does not identify who made the alleged misstatements, when the misstatements were made, what was incorrect about any given statement, or where any particular misstatement was made (Defs.' Am. Mem. at 10-11). The defendants would have the plaintiff plead these details with respect to each and every misstatement and/or lease transaction upon which the fraud claims in the amended complaint are based (*Id.* at 11).

We believe that defendants ask for more than the rules require. The particularity requirement set forth in Rule 9(b) "must be read in conjunction with Rule 8, which requires a short and concise pleading." *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 814 F. Supp. 720, 726 (N.D. Ill. 1993) (citing *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir. 1975)); *see also* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1298, at 617 (1990 ed.) ("Of primary importance in understanding the particularity requirement of Rule 9(b) is the recognition that it does not render the general principles set forth in Rule 8 entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other"). Rule 9(b) should be applied with an eye toward fulfilling the Rule's underlying purposes: "(1) to inform the defendants of the claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint

12

as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations." *Fujisawa*, 814 F. Supp. at 726. Moreover, where the "fraud allegedly occurred over a period of time, the requirements of Rule 9(b) are less stringently applied." *Id.*; *see also* WRIGHT & MILLER, § 1298, at 647. Rule 9(b)'s requirement of pleading with particularity also is relaxed if "the information that is required to plead rests exclusively within the defendants' control, or is otherwise unavailable to him." *In re Newell Rubbermaid, Inc. Litig.*, No. 99 C 6853, 2000 WL 1705279, at * 14 (N.D. Ill., Nov. 14, 2000).

Measured against these standards, plaintiff's allegations meet the requirements of Rule 9(b). This is not a case where the plaintiff cries "fraud," and offers nothing more. The amended complaint here describes in sufficient detail the nature of the alleged fraudulent conduct: falsified documentation describing the trim level of the vehicles being sold to the plaintiff, and purposeful misrepresentations credit information about the defendants' customers on the leases being sold to the plaintiff. The amended complaint asserts that the defendants submitted these fraudulent statements, providing the "who" (we reject the defendants assertion, without authority, that the plaintiff is required to identify a natural person who made the fraudulent submission). The amended complaint supplies the information concerning when this occurred (on more than a hundred occasions beginning in 1995), and where it occurred (through documents submitted to the plaintiff's office in Barrington, Illinois). There is enough specificity here to satisfy the purposes of protecting the defendants from cavalier allegations of fraud. Indeed, the amended complaint specifically alleges that the plaintiff has engaged in an investigation prior to filing: the plaintiff alleges that it has identified approximately 40 transactions involving credit misrepresentations, based on a sampling

of the defendants' portfolio (Am. Compl. ¶ 18), and further has identified approximately 120 transactions in which there were fraudulent misidentifications of vehicle trim levels (*Id.*, ¶ 31).

We note that two other judges within this district have rejected Rule 9(b) motions to dismiss in lawsuits brought by this plaintiff claiming fraudulent conduct by defendants involving a number of transactions over an extended period of time. *See Gelco Corp. v. Major Chevrolet, Inc.*, No. 01 C 9719, Slip. Op. at 14-18 (N.D. Ill., Oct. 30, 2002); *General Elec. Auto v. Phil Smith Chrysler, Plymouth, Eagle*, No. 00 C 0762, 2000 WL 1471615, * 5 (N.D. Ill, Oct. 2, 2002). Likewise, in this case, the Court concludes that the plaintiff has provided enough detail to allow the defendants to "mount an answer or defense." *See, e.g., Levin v. Prudential Bache Properties, Inc.*, 855 F. Supp. 924, 931 (N.D. Ill. 1994). Thus, the Court denies defendants' attempt to obtain dismissal of Counts I and III pursuant to Rule 9(b).

### D.

Finally, the defendants assert that Counts I through III all must be dismissed for failure to satisfy Federal Rule of Civil Procedure 8. Rule 8(a) requires a party to set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ. P. 8(a). *See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). The purpose of Rule 8(a) is to give the defendant fair notice of the plaintiff's claim and the grounds on which it rests. *Id.* "[T]he development of legal theories and the correlation of facts to theory come later in the process." *International Marketing, Ltd. v. Archer-Daniels Midland Co., Inc.*, 192 F.3d 724, 733 (7th Cir. 1999). Absent heightened pleading standards, "plaintiff can plead

conclusions as long as those conclusions provide minimal notice of the claim." *Liberty Mutual Fire Ins., Co. v. Reimer Exp. Enterprises, Ltd.,* 82 F. Supp.2d 887, 892 (N.D. Ill. 2000).

The defendants admit that this is not a difficult standard to satisfy, but nonetheless claim that the amended complaint fails to do so (Defs.' Am. Mem. at 12). The defendants claim that they have not been given fair notice of plaintiff's claim because the parties "engaged in literally thousands of lease transactions" and the amended complaint "gives [d]efendants absolutely no notice of which of those numerous transactions are questioned" (*Id.*). For example, defendants argue that "[f]or the Vehicle Description portion of the claim, GECAFS has given only one example of a misdescribed vehicle – and even then it is not clear whether the example is an actual example of an alleged breach or a hypothetical example (*Id.*) (referring to Am. Compl. ¶ 10). And, "[w]ith respect to the Credit History claim, only one specific example is provided, and even then no identification of the vehicle or customer is set forth" (*Id.*) (citing Am. Compl. ¶ 18). In short, the defendants' main complaint is that the plaintiff has not set forth a short and plain statement as to each of the many vehicles and leases that constitute the basis its claims and, as a result, the defendants "cannot investigate the allegations" of the amended complaint properly; "cannot admit or deny" many of these allegations; and "cannot provide initial Rule 26 disclosures because they do not know which documents are relevant or which persons have relevant information" (Defs.' Am. Mem. at 13).

As to the common law fraud (Count I) and conspiracy (Count III) claims, we find that this argument adds nothing to the defendants' separate argument – which we have addressed and rejected above – that those claims should be dismissed under Rule 9(b) for failure to plead fraud with particularity. As to the common law contract claim (Count II), we find this argument unpersuasive. The amended complaint clearly alleges that there were valid agreements that purportedly were

breached (the Lease Agreements); describes the conduct that constitutes the alleged breach or conspiratorial activity (knowingly submitting false identifications of the vehicles being sold to plaintiff, and false credit information about the customers on the leases being sold to the plaintiff); asserts that the plaintiff performed all of its contractual obligations; and claims that plaintiff has been damaged by the breach.

It is true that the amended complaint does not itemize each transaction in which this conduct allegedly occurred. But, the amended complaint does indicate that since 1995 there are no less than approximately 40 instances of misrepresentations concerning credit (Am. Compl., ¶ 18) and approximately 120 instances of alleged fraudulent misidentification of vehicles (*Id.*, ¶ 31); thus, the scope of the misconduct is alleged. We do not believe that Rule 8 requires more of the plaintiff in this case.[4]

As a fall-back argument, the defendants ask that if the complaint is not dismissed, the Court order a more definite statement to be made (Defs.' Reply Mem. at 11). Presumably, what the defendants seek in a more definite statement is a detailed listing of each transaction in which the plaintiff alleges that there was a submission of false vehicle identification or false credit information.

---

[4] The cases cited by defendants in support of their Rule 8 argument (Defs.' Am. Mem. at 12-14) presented situations different from the case at hand. In *Dimensions Medical Center, Ltd. v. Principal Financial Group, Ltd.*, No. 93 C 6264, 1995 WL 51586, * 4 (N.D. Ill. Feb. 6, 1995), the court found that Rule 8 was not satisfied, and that a more definite statement was required, where the counterplaintiff alleged that the counterdefendant had repeatedly violated various ERISA plans, "without ever stating *which specific plans* it refers to warranty payment of benefits" (emphasis added). In this case, the plaintiff has clearly stated what contracts the defendants allegedly have breached. In *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791-92 (7th Cir. 1996), the Seventh Circuit upheld the dismissal of the claim for monetary benefits for a technical violation of ERISA notice provisions. The Seventh Circuit explained that the complaint contained only conclusory allegations of exceptional circumstances, and did not set out facts "sufficient to 'outline or adumbrate' the basis of the claim." By contrast, the amended complaint in this case clearly outlines the nature of the alleged fraud with which the defendants are charged. Finally, in *Spiegel v. Babbit*, 855 F. Supp. 402, 404 (D.D.C. 1994), the court dismissed a claim which alleged that the park service had violated "the letter and spirit" of certain deeds of easement by failing to strictly enforce all of their restrictions, without identifying what restrictions allegedly were not enforced. However, in this case, the plaintiff has identified both the contracts that were allegedly violated, and how the defendants allegedly violated them.

However, this information readily may be sought by the defendants in discovery, which the Court has authorized the parties to commence. The Court will not allow the defendants to use a motion for a more definite statement "as a substitute for the discovery and deposition procedures made available by the Federal Rules of Civil Procedure." *Dimensions Medical Center*, 1995 WL 51586, * 3. Moreover, to the extent that the defendants have argued that they cannot comply with the initial disclosure requirements set forth in Federal Rule of Civil Procedure 26(a)(1) because they do not know which transactions are alleged to have involved fraud, the Court has eliminated that concern by relieving the parties of the obligation to make with Rule 26(a)(1)(A) and (B) disclosures in this case.

Accordingly, the Court denies the motion to dismiss for failure to comply with Rule 8, and the alternative request for a more definite statement.

## CONCLUSION

The defendants' motion to dismiss (doc. # 7) Count IV is GRANTED with prejudice; the motion to dismiss Counts I-III is DENIED. The defendants shall file and serve their answer to Counts I-III by January 20, 2003.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: December 24, 2002

17